UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYRA KIRK,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.
                                             /

File No. 1:05-CV-112

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This Federal Tort Claim Act action is before the Court on Plaintiff Myra Kirk's motion *in limine* to allow an increase in her administrative claim based on intervening facts not reasonably capable of detection at the time Plaintiff presented her claim to the United States Army.

### I.

This suit arises out of an automobile accident on November 17, 2000, between Plaintiff and an employee of the United States Army. Plaintiff sought medical treatment for injuries to her back and neck that she alleges she sustained as a result of this accident. Plaintiff initially tried nonsurgical treatment options, including cervical injections, physical therapy, and manipulation. In November 2005 she underwent an anterior cervical diskectomy, which involved removing the disk between the sixth and seventh cervical vetebra and fusing the two bones together. (Abood Dep. at 12-13).

On April 16, 2002, Plaintiff filed her administrative claim with the United States Army pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, seeking damages in the amount of $167,398.96. Plaintiff filed this action in federal court on February 14, 2005. On February 24, 2006, Plaintiff notified Defendant by letter of her intent to seek an additional $240,000 in damages relating to her surgery. On May 11, 2006, after the close of discovery, after the settlement conference, and less than a month before trial, Plaintiff filed the instant motion to increase her administrative claim to $407,398.96 based upon her contention that her surgery was not foreseeable at the time the administrative claim was filed.

## II.

"The FTCA grants a limited waiver of sovereign immunity and allows tort claims against the United States 'in the same manner and to the same extent as a private individual under like circumstances.'" *Chomic v. United States*, 377 F.3d 607, 609 (6th Cir. 2004) (quoting 28 U.S.C. § 2674). "In thus giving consent to suit in particular circumstances, the FTCA defines the scope of district court jurisdiction to entertain FTCA suits." *Flechsig v. United States*, 991 F.2d 300, 302 (6th Cir. 1993).

Before a plaintiff may file suit against the United States under the FTCA for personal injury or death, the plaintiff must have first presented the claim to the appropriate federal agency and have been denied compensation. 28 U.S.C. § 2675(a). As a general rule, a personal injury action under the FTCA is limited to the amount requested in the

2

administrative claim.  The purpose of the sum certain requirements of § 2675 "is to ensure that federal agencies charged with making an initial attempt to settle tort claims against the United States are given full notice of the government's potential liability."  *Allgeier v. United States*, 909 F.2d 869, 878 (6th Cir. 1990) (quoting *Low v. United States*, 795 F.2d 466, 470-71 (5th Cir. 1986)).  "[M]andating that a claimant propound a definite monetary demand ensures that '[t]he government will at all relevant times be aware of its maximum possible exposure to liability and will be in a position to make intelligent settlement decisions.'"  *Reilly v. United States*, 863 F.2d 149, 173 (1st Cir. 1988) (quoting *Martinez v. United States*, 780 F.2d 525, 530 (5th Cir. 1986)).  "The burden is on the claimant to show such intervening facts or newly discovered evidence."  *Allgeier*, 909 F.2d at 877 (citing *Kielwien v. United States*, 540 F.2d 676, 680 (4th Cir. 1976)).

The sum certain requirement is subject to two exceptions:  § 2675(b) provides that the cap does not apply "where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency," or where the plaintiff presents "proof of intervening facts, relating to the amount of the claim."  *Zurba v. United States*, 318 F.3d 736, 739 (7th Cir. 2003) (quoting 28 U.S.C. § 2675 (b)).  In the past, an additional operation has been considered to be an intervening fact within the meaning of the statutory sum certain exception.  *See Molinar v. United States*, 515 F.2d 246 (5th Cir. 1975).  However, the Sixth Circuit has determined that a more restrictive reading of "intervening fact" which requires an element of unforeseeability, as reflected in

3

subsequent case law, is supported by considerations of policy and law. *Allgeier*, 909 F.2d at 878 (citing *Low v. United States*, 795 F.2d 466 (5th Cir. 1986), and *O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842, 856 (2nd Cir. 1984)). *See also Reilly v. United States*, 863 F.2d 149, 171 (1st Cir. 1988) ("[I]ntelligence which serves only to bear out earlier suspicions cannot unlock the FTCA's narrow escape hatch. Diagnoses which are no more than cumulative and confirmatory of earlier diagnoses are neither 'newly discovered evidence' nor 'intervening facts' for the purposes of § 2675(b).").

In *Allgeier*, shortly before filing her FTCA administrative claim, the plaintiff's condition had improved to the extent that additional surgery was no longer contemplated. 909 F.2d at 878. After filing her claim the plaintiff's condition deteriorated and additional surgery was required. Under the circumstances presented the Sixth Circuit held that the need for the second operation and extensive additional treatment had not been reasonably foreseeable at the time the administrative claim was filed, and that the district court's allowance of an award exceeding the administrative claim was not clearly erroneous. *Id*. at 879.

Subsequent cases have held that in order to allow a damage award that exceeds the administrative claim the "allegedly newly discovered evidence or intervening facts must not have been reasonably capable of detection at the time the administrative claim was filed." *Dickerson ex rel. Dickerson v. United States*, 280 F.3d 470, 476 (5th Cir. 2002) (quoting *Low v. United States*, 795 F.2d 466, 470 (5th Cir. 1986)). Information can be newly discovered

evidence or an intervening fact "if it sheds new light on the basic severity of the claimant's condition-that is, if it materially differs from the worst-case prognosis of which the claimant knew or could reasonably have known when the claim was filed." *Lebron v. United States*, 279 F.3d 321, 330 (5th Cir. 2002).

In *Zurba* the Seventh Circuit affirmed an award in excess of the administrative claim where the plaintiff's severe emotional injuries which surfaced in the years following her accident were not included in the original. 318 F.3d at 740. The court explained that the plaintiff's emotional or psychiatric damages "materially" differed "from the worst-case prognosis of which she knew or could reasonably have known when her claim was filed." *Id.* at 741 (quoting *Lebron*, 279 F.3d at 330).

In this case Plaintiff contends that her worsening condition and subsequent surgery are intervening facts that were not contemplated at the time she filed her administrative claim and that they support an award that exceeds her administrative claim.

After the accident Plaintiff began treating with Dr. Faulkner. In his summary notes dated October 15, 2001, Dr. Faulkner indicated that Plaintiff had "a bulging disc at C6 that encroaches the left neural foramen." Although he had given her three epidural steroid injections, she still had pain, swelling, headaches, and problems with her left arm. Dr. Faulkner concluded:

> So the end results [sic] is that this patient may very well have to proceed to the next step which more than likely would be CT myelogram for the purposes of evaluation of the disc at C6 as well as the possibility of a selective nerve root block at C6. In other words, there may be some more information that needs

5

> to be gathered so that a neurosurgeon than can make plans on microdiscectomy, minimal invasion, try to remove the fragmented disc that is up against the nerve root.

(Stephens Decl., Attach. 4). (See also Faulkner Dep. at 29-30). Plaintiff's testimony confirms her understanding that the next step contemplated before she left Texas was surgery. (Kirk Dep. at 34-45).

In late 2001 Plaintiff moved to Michigan where she began treating with Dr. Abood. She and Dr. Abood discussed treatment options. The options discussed included surgery. "[W]e hit on surgery, but he wanted me to do this other stuff because I didn't want to be cut on." (Kirk Dep. at 46). "We talked about the different options, and we decided to try a further nonsurgical therapy." (Abood Dep. at 10). Dr. Abood recommended the osteopathic manipulation clinic at Michigan State University. (Abood Dep. at 10). When Dr. Abood sent her out for nonsurgical therapy he was hopeful that it would resolve her pain because "[a]bout 50 percent of the time or so it does." (Abood Dep. at 12).

When Plaintiff filed her administrative claim in 2002 she sought damages for personal injury as follows:

> Injury to neck and cervical vertebrae and disc. I have suffered extreme pain, discomfort, limitation of motion and impairment as a result of a bulging disc with nerve impingement at the C6 level.

(Def. Ex. 1, Stephens Decl. Ex. 1).

For the next three years Plaintiff attempted to deal with her neck pain by manipulation, injections, and acupuncture. (Kirk Dep. at 35. Finally, in 2005, her doctors

said they could not do anything more for her, so she went back to Dr. Abood who said that surgery was her only option.  (Kirk Dep. at 35).  Plaintiff's MRI in 2005 showed some thickening of the ligament behind C7 which indicated that her problem had worsened over time.  (Abood Dep. 24).  However, Dr. Abood did not indicate that this was a new or unexpected condition. He testified: "We see that.  When you've had a disk herniation or disk material pushing back into the spinal canal that's gone on for a prolonged period to time, you'll get some thickening of the posterior ligament there."  (Abood Dep. at 24).

It is clear from the evidence presented that before the filing of her administrative claim Plaintiff's treatment options included surgery.  Plaintiff opted to first try nonsurgical therapies.  According to her doctor, these therapies are only successful in about half the cases, so there was no guarantee that they would succeed in resolving the persistent pain in Plaintiff's neck.  The evidence also reveals  that the thickening of the ligament in Plaintiff's spine was part of the natural progression of a bulging disk.  Plaintiff's eventual decision to change her course of treatment and to try a surgical option was not unforeseeable.  It was within a reasonable worst-case prognosis at the time she filed her administrative claim.  Accordingly, Plaintiff's surgery does not constitute an intervening fact that would support a claim in excess of her administrative claim.  Plaintiff's motion *in limine* will accordingly be denied.

An order consistent with this opinion will be entered.

Date:     May 25, 2006            /s/ Robert Holmes Bell
                                  ROBERT HOLMES BELL
                                  CHIEF UNITED STATES DISTRICT JUDGE